# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| KATHIE LACY, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 3:10-CV-825-BH |
| § | |
| MICHAEL J. ASTRUE, Commissioner § | |
| of the Social Security Administration, § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

Pursuant to the consent of the parties and the *Order of Transfer*, dated June 30, 2010, this case has been transferred for all further proceedings and entry of judgment. Before the Court are the *Plaintiff's Motion for Summary Judgment*, filed July 20, 2010 (doc. 15), and *Defendant's Motion for Summary Judgment*, filed September 1, 2010 (doc. 18). Based on the relevant filings, evidence, and applicable law, Plaintiff's motion is **GRANTED,** Defendant's motion is **DENIED**, and the case is **REMANDED** to the Commissioner.

## I. BACKGROUND[1]

**A.  Procedural History**

Plaintiff Kathie Lacy ("Plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her claim for disability benefits under Title XVI of the Social Security Act. On December 29, 2005, Plaintiff applied for disability benefits and Supplemental Security Income. (Tr. at 82-92.) She claimed her disability began on December 1, 2005, due to high blood pressure, diabetes mellitus, and renal failure. (Tr. at 108.) Plaintiff's

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

application was denied initially and upon reconsideration. (Tr. at 44, 54.) She timely requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 60.) A hearing, at which Plaintiff personally appeared and testified, was held on December 18, 2007. (Tr. at 20-33.) On March 13, 2008 the ALJ issued his decision finding Plaintiff not disabled. (Tr. at 10-17.) The Appeals Council denied her request for review. (Tr. at 1-3.) Plaintiff then brought this timely appeal to the United States District Court pursuant to 42 U.S.C. § 405(g).

**B.    Factual History**

   **1.    Age, Education, and Work Experience**

Plaintiff was born on July 24, 1951; she was 54 years old at the time of alleged onset date of disability and 56 at the time of the hearing. (Tr. at 23.) She has a high school education and past relevant work experience as a medical clerk. (Tr. at 16, 26.)

   **2.    Medical Evidence**

In May 2005, Dr. Paul S. Worrell examined Plaintiff for swelling and pain in her knees and ankles. (Tr. at 150.) He diagnosed her with osteopenia, left knee sprain, left ankle sprain, and diabetes mellitus. (*Id.*) In August 2005, Plaintiff returned to Dr. Worrell and was diagnosed with knee pain, right knee osteoarthritis, diabetes mellitus, and hypertension. (*Id.*) He prescribed pain medication. (Tr. at 160.) In October 2005, Plaintiff consulted Dr. Worrell after reportedly suffering diabetic shock two days prior. (*Id.*) His assessment indicated hypoglycemia, fatigue, malaise, and type II diabetes mellitus. (*Id.*) He also noted that she was anemic and walked with a limp. (Tr. at 150, 158.) In November 2005, Plaintiff presented to Dr. Worrell with extreme pain in her knees. (Tr. at 156.) He indicated that she had possible osteoarthritis and decreased range of motion. (*Id.*)

In November of 2005, Plaintiff was referred to Dr. Michael Landgarten's office for

evaluation of renal insufficiency. (Tr. at 169.) Dr. Landgarten's assessment indicated chronic renal insufficiency, diabetes mellitus, hypertension, significant anxiety, and anemia. (Tr. at 170.) He found that Plaintiff's renal insufficiency was diabetic nephropathy with concomitant hypertensive nephrosclerosis. (*Id.*) In addition, Plaintiff displayed anxiety, had significantly elevated blood pressure, and was treated for gout. (Tr. at 151, 170.) Dr. Landgarten suspected the duration of her hypertension to be significantly greater than five years. (Tr. at 151.)

In December 2005, Plaintiff had a follow-up appointment with North Texas Kidney Specialists for her chronic renal insufficiency. (Tr. at 172.) Plaintiff's assessment indicated chronic kidney disease stage III, hypertension, and diabetes mellitus. (*Id.*) Later that month, she visited Parkland Memorial Hospital reporting symptoms of chronic renal insufficiency, fever, chills, and edema. (Tr. at 197.) Upon discharge, Plaintiff was diagnosed with stage II chronic kidney disease due to hypertensive and diabetic nephropathy. (Tr. at 151.) She was also diagnosed with dyslipidemia, anemia, and renal osteodystrophy. (*Id.*)

In 2006, Plaintiff had several follow-up appointments at Parkland Hospital. (Tr. at 199-220.) In March 2006, she reported pain in her shoulder at a level five out of ten. (Tr. at 202.) Parkland Hospital determined that her chronic kidney disease was in stage III in April 2006. (Tr. at 215.)

**C.** **Hearing Testimony**

A hearing was held before the ALJ on December 18, 2007. (Tr. at 22-23.) Plaintiff appeared personally without representation by an attorney or a non-attorney representative. (*Id.*)

**1. Plaintiff**

Plaintiff testified that she was single and lived with her daughter in a rental home. (Tr. at

24.) She did not drive nor own a vehicle, and she did not receive any sort of public aid. (Tr. at 25.*)* She was last employed June 2005, until the company she was working for closed down. (Tr. at 26.) She looked for work but was unable to find employment. (*Id.*) She also drew unemployment insurance during that time. (*Id.*)

Concerning her physical impairments, Plaintiff asserted that her health had deteriorated since June 2005. (Tr. at 27.) She was unable to stand and move around as she once did. (*Id.*) She discussed becoming tired or hurting after activities such as household chores and walking to the bus stop. (Tr. at 27-28.) She took several medications for diabetes as well as prescriptions for cholesterol, hypertension, and high blood pressure. (Tr. at 28.) She also noted that for regular aches, pains, gout, and arthritis, she was only able to take Tylenol because of her kidneys. (*Id.*)

### 2. Vocational Expert

A vocational expert ("VE") testified at the hearing that Plaintiff's past relevant work as a medical clerk would be classified as a light clerical job, semi-skilled, SVP:3, because she was on her feet the majority of the eight-hour day. (Tr. at 31.) The ALJ asked the VE whether Plaintiff would be able to return as a medical clerk if he were to assign her an RFC at the light work or light level with no climbing of ropes, ladders or scaffolds and occasional postural activities. (*Id.*) The VE opined that if she had the capacity to do light work, then that would be sufficient to perform her past work as a medical clerk. (Tr. at 32.)

### D. ALJ's Findings

The ALJ denied Plaintiff's application for disability insurance benefits and supplemental security income payments by written opinion issued on March 13, 2008. (Tr. at 10-17.) He found

that she had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 13, ¶2.) The ALJ next found that Plaintiff suffered from the severe impairments of "hypertension, diabetes mellitus, renal failure, and obesity." (Tr. at 13, ¶ 3.) However, he concluded that she was not disabled because she did not have an impairment that met or medically equaled one of the listed impairments of 20 C.F.R. §§ Part 404, Subpart P, Index 1. (Tr. at 14, ¶ 4.) She retained the RFC to perform light work with occasional postural activities and no climbing of ladders, ropes, and scaffolds, and was capable of performing past relevant work as a medical clerk. (Tr. at 16, ¶¶ 5-6.) The ALJ determined that Plaintiff had not been disabled since the alleged onset date through the date of his decision. (Tr. at 17, ¶ 7.) As a result of her qualifying for unemployment benefits after June 2005, the ALJ was unable to find Plaintiff's allegations totally credible. (Tr. at 15, ¶ 5.) He noted that her "subjective allegations and contentions of pain and resulting symptomatology are exaggerated and not entirely credible." (Tr. at 16, ¶ 5.)

## II.     ANALYSIS

### A.     Legal Standards

#### 1.     Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558,

564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See id.* Thus, the Court may rely on decisions in both areas without distinction in reviewing an ALJ's decision. *Id.*

### 2. Disability Determination

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563–64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant

is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

### 3. Standard for Finding of Entitlement to Benefits

Plaintiff asks the Court to reverse the Commissioner's decision and award benefits, and in the alternative, to remand for further proceedings. (Pl. Br. at 16.)

When an ALJ's decision is not supported by substantial evidence, the case may be remanded "with the instruction to make an award if the record enables the court to determine definitively that the claimant is entitled to benefits." *Armstrong v. Astrue*, No. 1:08-CV-045-C, 2009 WL 3029772, *10 (N.D. Tex. Sept. 22, 2009) (adopting recommendation of Mag. J.). The claimant must carry "the very high burden of establishing 'disability without any doubt.' " *Id.* at *11 (citation omitted). Inconsistencies and unresolved issues in the record preclude an immediate award of benefits. *Wells v. Barnhart*, 127 F. App'x 717, 718 (5th Cir. 2005). The Commissioner, not the court, resolves evidentiary conflicts. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

### B. Issues for Review

Plaintiff presents the following issues for review:

(1) Lacy's waiver of counsel was invalid and prejudicial because the ALJ and the Administration failed to properly apprise her rights.

(2) The ALJ committed legal errors in failing to use the Stone standard of severity in assessing Lacy's impairments.

(P. Br. at 1).

### C. Severe Impairment

Plaintiff asserts that the ALJ erred in applying a severe impairment standard that does not comport with the specific requirements of the Fifth Circuit, and that this error prejudiced her. (Pl. Br. at 12.) Specifically, she alleges that the ALJ failed to find that her knee pain was a severe impairment despite evidence in the record to support these findings. (Pl. Br. at 14-15.)

8

Pursuant to the Commissioner's regulations, a severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The Fifth Circuit has held that a literal application of this regulation would be inconsistent with the Social Security Act because the regulation includes fewer conditions than indicated by the statute. *Stone*, 752 F.2d at 1104-05. Accordingly, in the Fifth Circuit, an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." *Id.* at 1101. Additionally, the determination of severity may not be "made without regard to the individual's ability to perform substantial gainful activity." *Id.* at 1104.

To ensure that the regulatory standard for severity does not limit a claimant's rights, the Fifth Circuit held in *Stone* that it would assume that the "ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) (1984) is used." *Id.* at 1106; *accord Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). Notwithstanding this presumption, the Court must look beyond the use of "magic words" and determine whether the ALJ applied the correct severity standard. *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986). Unless the correct standard of severity is used, the claim must be remanded to the Secretary for reconsideration. *Stone*, 752 F.2d at 1106.

Here, when setting out the applicable law, the ALJ stated in his opinion that an "impairment or combination of impairments is 'severe' within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities." (Tr. at 11.) This is the standard set

9

forth in 20 C.F.R. §§ 404.1520(c) and 416.920(c) that *Stone* found to be inconsistent with the Social Security Act. *See* 752 F.2d at 1104-05. The ALJ also stated that "an impairment or combination of impairments is 'not severe' when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. (Tr. at 11) (citing 20 C.F.R. §§ 401.1521 and 416.921; and Social Security Rulings (SSR) 85-28, 96-3p, and 96-4p). Under *Stone*, however, an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." 752 F.2d at 1101. Unlike the standard set out by the ALJ, *Stone* provides no allowance for a minimal interference with claimant's ability to work.

Conceding that the ALJ did not reference *Stone* in his decision, the Commissioner argues that a review of the ALJ's decision shows that he evaluated Plaintiff's impairment under the proper standard, and that the failure to cite *Stone* is not reversible error. (Df. Br. at 9.) However, the ALJ's findings and conclusions do not provide any indication that he applied the correct severity standard. (Tr. at 11-14.) The ALJ cites to regulations and concludes that Plaintiff has a severe combination of impairments without any discussion of the effects that her impairments would have on her ability to work. (Tr. at 13-14.) His Step 2 analysis consists entirely of a review of Plaintiff's medical evidence. (*Id.*) Because the ALJ's application of the regulations does not expressly state the *Stone* standard or another opinion of the same effect, and he makes no express statement that he used the definition of severity in *Stone*, he has failed to analyze Plaintiff's "medically determinable impairments at step 2 in accordance with the standard articulated by the Fifth Circuit." *Neal v. Comm'r of Soc. Sec. Admin.*, No. 3:09-CV-522-N-BH, 2009 WL 3837500, at *6 (N.D. Tex. Sept.

11, 2009) (recommendation of Mag. J. citing *Stone*, 752 F.2d at 1106), *adopted by* 2009 WL 3856662 (N.D. Tex. Nov. 16, 2009); *accord Garcia v. Astrue*, No. 3:08-CV-1881-BD, 2010 WL 304241, at *3-4 (N.D. Tex. Jan. 26, 2010). "[H]is citation to an incorrect definition of severity and the absence of a detailed narrative discussion at Step 2 creates ambiguity" that must be resolved at the administrative *See Neal*, 2009 WL 3856662, at *1. It also precludes an immediate award of benefits. *See Wells*, 127 F. App'x at 718.

Generally, appeals from administrative agencies of a procedural error will not lead to a vacated judgment "unless the substantial rights of a party have been affected." *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989) (citing *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam)). However, the ALJ's failure to apply the *Stone* standard is a legal error, not a procedural error. The Fifth Circuit left the lower courts no discretion to determine whether such an error is harmless. Rather, the court mandated that "[u]nless the correct standard is used, the claim *must* be remanded to the Secretary for reconsideration." *Stone*, 752 F.2d at 1106 (emphasis added). Because the ALJ applied an incorrect standard of severity at Step 2, remand is required. Since remand is required for this reason, the Court does not consider Plaintiff's other issue for review.

### III. CONCLUSION

*Plaintiff's Motion for Summary Judgment* is **GRANTED**, *Defendant's Motion for Summary Judgment* is **DENIED**, and the case is **REMANDED** to the Commissioner for reconsideration.

**SO ORDERED, on this 29th day of October, 2010.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE